RECEIVED
IN LAKE CHARLES, LA.

OCT 22 2009

TONY R. MOORE, CLERK
BY_____
            DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| REV. LAWRENCE MILLER | : | DOCKET NO. 2:08 CV 1131 |
| VS. | : | JUDGE MINALDI |
| ANTHONY MANCUSO, SHERIFF OF CALCASIEU PARISH, LOUISIANA; BRENT CLOUD AND MIKE AYMOND, CALCASIEU PARISH SHERIFF'S DEPUTIES; AND ST. PAUL FIRE AND MARINE INSURANCE COMPANY | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment, [doc. 25], filed by defendant Sheriff Anthony Mancuso. The plaintiff, Reverend Lawrence Miller, filed an Opposition [doc. 31]. Sheriff Mancuso filed a Reply [doc. 32]. In response to Rev. Miller's request to conduct discovery, this Court issued an Order allowing Rev. Miller to file an additional Opposition [doc. 33]. Rev. Miller filed a supplemental Opposition, [doc. 42], in the form of a joint opposition to two pending Motions for Summary Judgment.[1] Sheriff Mancuso also filed an additional Reply [doc. 43].

### FACTS

On August 6, 2007, Calcasieu Parish Sheriff's Deputies Brent Cloud and Mike Aymond

---

[1] Defendants Brent Cloud, Mike Aymond, and St. Paul Fire and Marine Insurance Company filed a Motion for Summary Judgment [doc. 34]. Rev. Miller filed an Opposition [doc. 42], opposing both Mancuso's Motion for Summary Judgment [doc. 25] and the remaining defendants' Motion for Summary Judgment [doc. 34].

arrested Rev. Miller in the parking lot of the Calcasieu Parish Career Center.[2] The Calcasieu Parish School Board had previously granted Rev. Miller and members of New Faith Missionary Baptist Church permission to use the Career Center facilities.[3] According to Rev. Miller, Cloud and Aymond used excessive force to arrest him by grabbing his throat, choking him, and slamming his body into the concrete.[4] Sheriff Mancuso did not participate in the arrest.[5] Rev. Miller alleges that the deputies' actions violated his Constitutional rights and amounted to unlawful arrest and seizure.[6] Rev. Miller further alleges that Cloud and Aymond intentionally inflicted serious personal injuries upon him without cause or legal justification because of his race and that they were negligent in not following proper procedures or taking due care to prevent his injuries.[7] For his sustained injuries, Rev. Miller seeks damages against Sheriff Mancuso for failure to properly train and/or supervise Deputies Cloud and Aymond.[8] A jury trial is set for November 2, 2009.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v.*

---

[2] Second Amend. Compl. ¶¶ 11, 12, 18 [doc. 17].

[3] *Id.* ¶ 12.

[4] *Id.* ¶¶ 18, 19.

[5] Plaintiff asserts that Deputies Cloud and Aymond were "unsupervised during the actions depicted herein." *Id.* ¶ 8.

[6] *Id.* ¶ 26.

[7] *Id.* ¶ 27.

[8] *Id.* ¶¶ 9, 10.

*Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational finder of fact to find for the non-moving party..." *Id.*

## ANALYSIS

In his amended complaint, Rev. Miller alleges that Sheriff Mancuso failed to train and/or supervise Deputies Cloud and Aymond.[9] Rev. Miller alleges that Sheriff Mancuso is liable in his official capacity only.[10] Rev. Miller alleges claims under 42 U.S.C. § 1981, 1983, 1985(2) and (3), 1986, and 1988, and the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Rev. Miller also asserted state law claims arising under La. Civ. Code Articles 2315, 2315.1, 2315.2, 2316, 2317, and 2324, and under Sections 2, 3, 5, 7, 13, and 20 of the Louisiana Constitution. Sheriff Mancuso seeks dismissal of all claims against him.

---

[9] *Id.*

[10] *Id.* ¶ 5.

## I. Section 1983 Claim

"Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). To be liable under section 1983, a sheriff must be personally involved in the constitutional deprivation, or there must be a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Mesa v. Prejean*, 543 F.d 264, 274 (5th Cir. 2008) (quoting *Thompkins v. Belt*, 828, F.2d 298, 304 (5th Cir. 1987)).

Rev. Miller does not allege that Sheriff Mancuso affirmatively participated in the acts surrounding the alleged violation of his constitutional rights. Additionally, Sheriff Mancuso presents competent summary judgment evidence that he was not involved in the arrest, incarceration and alleged mistreatment of Rev. Miller.[11] There is no evidence in the record that would create an issue of fact as to whether Sheriff Mancuso affirmatively participated in the events of August 6, 2007.

Sheriff Mancuso also argues that he did not institute, or fail to institute, policies or regulations that deprived Rev. Miller of his constitutional rights. For a plaintiff to succeed on a failure to train claim, he must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Gates v. Texas Dept. of Protective & Reg. Services*, 537 F.3d 404, 435 (5th Cir. 2008) (quoting *Estate of Davis ex. rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005)). Proof of deliberate indifference requires a plaintiff to show "at least a pattern of similar violations

---

[11] Def.'s Ex. A.

arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) (quoting *Burge v. St. Tammany Parish*, 336 F.3d 370 (5th Cir. 2003)).

In *Gates*, the Fifth Circuit affirmed summary judgment on the plaintiff's section 1983 claim for supervisory liability against Fort Bend Sheriff Milton Wright because there was no evidence of a causal connection between training and any alleged constitutional violations. *Gates*, 537 F.3d at 436. In his deposition, Deputy Carlos Carillo testified that he was trained "not to enter a home if the occupant refused to grant consent and there was no warrant or exigency." *Id.* Thus, the Fifth Circuit concluded there was no evidence of a causal connection between any failure of training and the alleged deprivation of the plaintiff's constitutional rights. *Id.*

Here, Sheriff Mancuso's affidavit states that all Calcasieu Parish Sheriff's Deputies, including Deputies Cloud and Aymond, have complied with the minimum training requirements mandated by La. R.S. 40:2405.[12] Specifically, Deputies Cloud and Aymond are trained regularly on recent legal developments and have completed required basic training from an accepted law enforcement academy.[13] Sheriff Mancuso also stated that he has not set forth any orders, regulations or procedures for any Calcasieu Parish Deputy to arrest an individual without probable cause, to use unnecessary force, or to make a non-consensual warrantless search.[14] Rather, Sheriff Mancuso stated

---

[12] *Id.* La. R.S. 40:2405 provides, in part, that peace officers must successfully complete a certified training program approved by the council and successfully pass a council-approved comprehensive examination within one calendar year from the date of initial employment. La. R.S. 40:2405(A)(1).

[13] *Id.*

[14] *Id.*

5

that his directives preclude the use of excessive force, unlawful arrest and racial profiling.[15]

Sheriff Mancuso has satisfied his burden for summary judgment; therefore, the burden shifts to Rev. Miller to demonstrate there are specific facts that present a genuine issue for trial. Rev. Miller argues that the deputy involved in the arrest, Deputy Cloud, had received only four hours of training to deal with members of the black community. Rev. Miller attaches Deputy Cloud's deposition testimony that Cloud had received one afternoon of training on how to deal with the minority community.[16] Cloud, a twenty-seven year old white male, further testified that he called Rev. Miller, a sixty year old black male, "boy" on several occasions because he thought the word was a term of endearment.[17] Finally, Rev. Miller adds that at the time of the arrest, Deputy Cloud had only been a patrol deputy for approximately two months.

It is uncontested that Deputies Cloud and Aymond complied with training requirements and received regular training on developments in the law. Rev. Miller has not put forth sufficient evidence creating an issue of fact that Sheriff Mancuso failed to train and/or supervise Deputies Cloud and Aymond. Accordingly, Rev. Miller's claim for supervisory liability under section 1983 against Sheriff Mancuso is hereby DISMISSED.

## II. Remaining Federal Claims

Sheriff Mancuso also seeks dismissal of all Civil Rights claims and state law claims against him. Other than his section 1983 claim, Rev. Miller has failed to plead his other claims against Mancuso with any specificity. Under a Rule 56 Motion for Summary Judgment, a

---

[15] *Id.*

[16] Plaintiff's Ex. C, pp. 12-13.

[17] *Id.* at p. 35.

plaintiff may no longer rely on his allegations, but instead must show that he has the ability to prove his claims at trial. Rev. Miller has failed to produce any evidence showing a genuine issue for trial on any of his alleged claims. Accordingly, these remaining claims against Sheriff Mancuso are hereby DISMISSED.

IT IS ORDERED that Sheriff Mancuso's motion for summary judgment [doc. 25] is hereby GRANTED.

IT IS FURTHER ORDERED that all claims against Sheriff Mancuso are hereby DISMISSED with prejudice at the plaintiff's cost.

Lake Charles, Louisiana, this 21 day of October, 2009.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE